## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| PITTS ENTERPRISES, INC. ) | |
| ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | Court No. 23-00234 |
| v. ) | |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## COMPLAINT

Plaintiff Pitts Enterprises, Inc. ("Pitts" or "Plaintiff"), by and through the undersigned counsel, hereby allege the following for its Complaint against the United States, acting by and through U.S. Customs and Border Protection ("CBP").

## ADMINISTRATIVE DETERMINATIONS CONTESTED

1.      Plaintiff contests (a) the May 23, 2023, affirmative determination as to Enforce and Protect Act ("EAPA") "evasion" issued by CBP's Trade Remedy Law Enforcement Directorate ("TRLED"), Office of Trade ("OT") in EAPA Case Number 7711 under 19 U.S.C. § 1517(c); and (b) the September 28, 2023, decision under 19 U.S.C. § 1517(f) issued by CBP's OT, Regulations and Rulings ("RR") in administrative review number H332952 affirming TRLED's May 23, 2023, determination.

2.      CBP's EAPA determinations cover unliquidated entries of the chassis made by Plaintiff entered from June 29, 2021, through the investigation.

## PARTIES

3.      Pitts acted as importer of record of certain finished chassis manufactured in Vietnam

1

integrating Chinese components. Pitts was named and targeted by CBP in the EAPA

investigation Case Number 7711. Pitts, as an importer, is thus an interested party in accordance

with 19 U.S.C. § 1517(a)(6)(A)(i).

4.      Defendant is the United States of America, acting by and through CBP.

## JURISDICTION

5.      This Court has jurisdiction in accordance with 28 U.S.C. § 1581(c) for any civil action

commenced under section 517 of the Tariff Act of 1930 (19 U.S.C. § 1517). Plaintiff

Pitts is commencing this action in accordance with 19 U.S.C. § 1517(g)(1), which provides for

judicial review by the United States Court of International Trade of TRLED's determination

under 19 U.S.C. § 1517(c) and RR's administrative review determination under 19 U.S.C. §

1517(f).

## STANDING OF PLAINTIFF

6.      Plaintiff is a "person determined to have entered such covered merchandise through

evasion", is the importer of record of the merchandise subject to the CBP's EAPA

determinations, and therefore has standing to bring this action under 19 U.S.C. § 1517(g)(1).

7.      Plaintiff is an interested party within the meaning of 19 U.S.C. § 1517(a)(6) and 28

U.S.C. § 2631(k)(1), and has been adversely affected and aggrieved by TRLED's affirmative

evasion determination made under 19 U.S.C. § 1517(c) and RR's affirmation of TRLED's

determination made under 19 U.S.C. § 1517(f), which are agency actions within the

meaning of 5 U.S.C. § 702. Therefore, Plaintiff has standing to bring this action pursuant to 28

U.S.C. § 2631(i).

## TIMELINESS OF THIS ACTION

8.      An action under 28 U.S.C. § 1581(c) based on 19 U.S.C. § 1517 must be commenced

within thirty (30) business days after RR completes its administrative review under 19 U.S.C. §

1517(f). *See* 19 U.S.C. § 1517(g)(1). RR completed its administrative review on September 28,

2023, and transmitted the RR decision (dated September 28, 2023). The thirtieth business day

after September 28, 2023 (excluding Saturdays, Sundays, and federal holidays) falls on

November 13, 2023. Accordingly, this action is timely filed (*i.e.*, not later than 30 business days

after CBP completes an administrative review under 19 U.S.C. § 1517(f)).

## PROCEDURAL HISTORY AND BACKGROUND

9.      Pitts is a worker-owned U.S. manufacturer of chassis, a member of the Coalition of

American Chassis Manufacturers, and petitioned the U.S. Department of Commerce

("Commerce") and the International Trade Commission ("ITC") for the antidumping and

countervailing duty ("AD/CVD") orders on certain chassis and subassemblies thereof from the

People's Republic of China ("China"); the AD/CVD orders at issue in the CBP EAPA

investigation. See *Certain Chassis and Subassemblies Thereof From the People's Republic of*

*China: Antidumping Duty Order*, 86 Fed. Reg. 36093 (Dep't Commerce Jul. 8, 2021) and

*Certain Chassis and Subassemblies Thereof From the People's Republic of China:*

*Countervailing Duty Order and Amended Final Affirmative Countervailing Duty Determination*,

88 Fed. Reg. 24844 (Dep't Commerce May 10, 2021) (collectively the "Orders").

10.     Pitts, as petitioner, proposed the scope language agreed to by Commerce in the original

AD/CVD investigations and as defined in the Orders.

11.     The scope interpretation was settled during the original AD/CVD investigations. The

scope was agreed to by Commerce to reflect the intention of the domestic producers documented

in Commerce scope determinations. The scope of the Orders covers Chinese chassis and

subassembly merchandise, but not individual Chinese components alone as parts that may be

used, first to fabricate subassemblies and then to construct finished chassis, in the United States

or in non-subject source countries. Specifically, in the original AD/CVD investigations petitioner

stated: "components…are not intended to be independently covered by the scope language (*i.e.*,

they are not covered by the scope when entered separately from the {covered Chinese} chassis or

subassemblies thereof…. {Only} if a component or components are entered with a <u>covered</u>

{Chinese} chassis or subassembly, those components would be covered merchandise and subject

to duties. *See* Pitts Letter to CBP re: EAPA Investigation and Interim Measures as Applied to

Pitts Enterprises, Inc. (Nov. 9, 2022) ("Pitts Nov. 9, 2022 Ltr."), Exhibit H (excerpt Letter from

Petitioner to Sec'y Commerce re: Response to Supplemental Questions on Petition at 3 (Aug. 7,

2020))(emphasis added). Commerce confirmed this scope definition in scope determinations and

as set in the Orders. *See id*., Exhibits E and F (Memorandum from Alex Villanueva, Senior

Director, to James Maeder, Deputy Assistant Secretary for Antidumping and Countervailing

Duty Operations Antidumping Duty and Countervailing Duty Investigations of Certain Chassis

and Subassemblies Thereof from the People's Republic of China: Scope Comments Decision

Memorandum for the Final Determinations (Dep't Commerce Mar. 15, 2021) ("Final Scope

Memorandum") and Memorandum from Mary Kolberg, International Trade Analyst, to James

Maeder, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations,

Certain Chassis and Subassemblies Thereof from the People's Republic of China: Scope

Comments Preliminary Decision Memorandum (Dep't Commerce Feb. 9 2021) ("Preliminary

Scope Memorandum"), respectively).

12.    Moreover, Commerce confirmed in the original AD/CVD investigations the scope lists

four specific Chinese subassemblies, explicitly, chassis frames, running gear/axle assemblies,

landing gear assemblies, and connection assemblies. See Orders at 36094 (AD) and 24845

(CVD). Covered subassemblies are defined as articles "for connection to" or "that connect to" the chassis frame. *Id*. "Within each subassembly there are numerous components that comprise a given subassembly." *Id*. The scope definition, thus, distinguishes non-scope "components" as separate articles from covered "subassemblies" that are made of combinations of "components". *Id.*; *see also* Pitts Nov. 9, 2022 Ltr., Exhibit E (Final Scope Memorandum).

13.     In addition, in the original AD/CVD investigations Commerce confirmed that third country processing scope language "stipulates that {it is} <u>Chinese</u> finished and unfinished chassis that have been processed or assembled in a third country {that} remain in scope" and not Chinese components alone. *Id.*, Exhibit F (Preliminary Scope Memorandum)(emphasis added).

14.     The Orders specifically state:

> Individual components entered and sold by themselves are not subject to the order, but components entered with or for further assembly with a finished or unfinished chassis are subject merchandise. A finished chassis is ultimately comprised of several different types of subassemblies. Within each subassembly there are numerous components that comprise a given subassembly.

*See* Orders at 36094 (AD) and 24845 (CVD).

15.     While predominantly a U.S. chassis manufacturer, prior to the original AD/CVD investigations on Chinese chassis and subassemblies thereof Pitts obtained additional chassis from non-subject source countries to respond to the need to strengthen the U.S. logistics chain. Specifically, Pitts sought to source finished chassis from the integrated Vietnamese chassis producer, Truong Hai Auto Corporation Special Vehicles Manufacturing Limited Company ("THACO"), prior to the filing of the petitions and subsequently issued Orders. *See* Pitts Response to Nov. 8, 2022 Request for Information at 3 (Dec. 20, 2022) ("Pitts Dec. 20, 2022 RFI Resp."); *see also Chassis and Subassemblies from China*, USITC Pub. 5187, Inv. No. 701-TA-657 at II-12 and II-15 (May 2021) (Final) ("ITC Final").

16.     Within a year of issuance of the Orders, on May 11, 2022, CIMC Intermodal Equipment LLC, dba CIE Manufacturing ("CIMC"), submitted a request to CBP to initiate an EAPA investigation against Pitts alleging that the Orders cover individual Chinese axle components and individual Chinese landing gear leg components integrated in the Pitts chassis manufactured in Vietnam, and exported from Vietnam and entered the United States as finished chassis. *See* Letter from CBP re: Notice of Initiation of Investigation and Interim Measures – EAPA Case Number 7711 at 2 n. 8, 4 (Oct. 25, 2022) (Public Version) ("Notice of Initiation").

> CIMC claimed Pitts is importing certain chassis incorporating subassembly components from China without the payment of AD/CVD duties by claiming that the imported chassis originated in Vietnam and by failing to identify "covered merchandise" (*i.e.*, chassis subassembly components, including Chinese-origin axles and landing gear legs, entered with finished or unfinished chassis).

*Id.* at 2.

17.     CIMC, the alleger, is a U.S. subsidiary of one of China's largest and dominant state-owned enterprises through a chain of ownership leading to the State-Owned Assets Supervision and Administration Commission of the State Council ("SASAC"). Divisions of CIMC, as the largest Chinese chassis producers, were the mandatory respondents in the AD/CVD investigations at Commerce and Commerce found CIMC was part of the China-wide entity engaged in unfair practices that injured U.S. chassis producers, including Pitts. *See* Pitts Nov. 9, 2022 Ltr. at 3, and Exhibit C (Letter to CBP on behalf of petitioner, the Coalition of American Chassis Manufacturers).

18.     CBP acknowledged receipt of CIMC's allegation on June 29, 2022. *See* Notice of Initiation at 2.

19.     On July 20, 2022, CBP determined that the information provided in the CIMC scope allegation reasonably suggested that Pitts evaded the Orders "by importing chassis with Chinese-

origin components {, specifically axle components and landing gear leg components,} into the United States as a product of Vietnam only, without disclosing China as the country of origin of the components". *Id*. at 4-5. On this basis, CBP initiated EAPA investigation number 7711 against Pitts.

20.     Between July 20, 2022, and October 18, 2022, CBP conducted a secret evasion investigation of Pitts without notice to Pitts of CIMC's scope allegation or CBP's resulting scope interpretation, and Pitts was not given an opportunity to defend against the scope interpretation, and basis of CBP's EAPA investigation.

21.     In particular, CBP issued two CF-Form 28 Requests for Information to Pitts covering two entries. *Id*. On September 23, 2022, Pitts provided "expansive CF-28 responses" with thousands of pages of documentation including bill of materials, purchase and receipt of the raw materials, components, and parts for the THACO production of the finished chassis in Vietnam. *Id*. at 6.

22.     On October 18, 2022, CBP then informed Pitts by email of the investigation, that TRLED had developed a record giving rising to a "reasonable suspicion" of evasion of the Orders by Pitts, and the imposition of interim measures. *See* email from EAPA Investigations, TRLED, CBP re: EAPA 7711: Notice of Enactment of Interim Measures (Oct. 18, 2022).

23.     CBP found a "reasonable suspicion" of evasion and imposed interim measures against Pitts based on the accepted CIMC scope interpretation, entailing the suspension of liquidation of unliquidated entries on or after the date of initiation, extension of unliquidated entries before the date of initiation, and the requirement for live entry with cash deposits prior to release of merchandise post-initiation. *See id*.; *see also* Notice of Initiation at 8-9.

> Based on the record evidence, CBP determines that reasonable suspicion exists that Pitts entered covered merchandise for consumption into the customs territory of the United States through evasion <u>by importing chassis with Chinese-origin components into the United States</u> as a product of Vietnam only, <u>without</u>

<u>disclosing China as the country of origin of the components</u>, and without identifying the chassis with Chinese-origin components as Type 03 entries, <u>subject to the Orders</u>.

*Id*. at 8 (emphasis added).

24.    Pitts reacted immediately upon receipt of CBP's Notice of Initiation with a letter from petitioner informing CBP of the legal framework required to apply the Orders to Chinese chassis and subassemblies, not Chinese components alone, and the Commerce scope determinations directly contradicting the CIMC scope allegation and resulting basis for the CBP investigation. *See* Pitts Nov. 9, 2022 Ltr. Pitts also requested that CBP make a covered merchandise referral to Commerce on the product type covered. *Id*.

25.    In particular, Pitts placed primary interpretive source information from the original Commerce and ITC investigations on the EAPA investigation record, which include descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of Commerce (including the prior scope determinations) and the ITC, which are the source materials used by the courts and Commerce to interpret plain scope language. See, e.g., *Fedmet Res. Corp.* v. *United States,* 755 F.3d 912 (Fed. Cir. 2014) and 19 C.F.R. § 351.225(k)(1). Letters from petitioner were also placed on the EAPA record. *See* Pitts Nov. 9, 2022 Ltr., Exhibit C; *see also* Pitts Letter to CBP re: Submission of Petitioner Comments in Support of Pitts Scope Ruling Application with Commerce (Jan. 19, 2023).

26.    Chassis production was defined in the original AD/CVD investigations as integrated production performed by the domestic producers, compared with the targeted assembly-only operations carried out by the alleger CIMC's affiliates. Integrated chassis production means finished chassis are built from steel raw materials and numerous components that are produced

by third parties, including the axle components and landing gear leg components. *See* ITC Final at 20, I-13–I-14, I-21, II-2.

27.     Despite the Pitts request that CBP make a covered merchandise referral to Commerce, CBP issued requests for information ("RFI") separately to Pitts and to the Vietnamese integrated manufacturer of chassis, THACO, to which Pitts and THACO separately responded to CBP on December 20, 2022. See Pitts Dec. 20, 2022 RFI Resp. and THACO Response to Nov. 8, 2022 Request for Information (Dec. 20, 2022) (Public Version) ("THACO Dec. 20, 2022 RFI Resp."), respectively.

28.     In its response, Pitts explained the scope and the Commerce scope determinations directly contradicting the CIMC scope allegation and basis of the CBP investigation. *See* Pitts Dec. 20, 2022 RFI Resp.

29.     In its response, THACO provided expansive documentation of the integrated finished chassis production in Vietnam from raw materials, components, and parts, as well as the bill of materials for the Pitts chassis. *See* THACO Dec. 20, 2022 RFI Resp. (Public Version). Specifically, CBP asked for a "list of countries you {THACO} source parts from…." *Id.* (Narrative Part III Question 8). In response, THACO replied considering overall production at its facilities, and not specific to Pitts chassis.

> Please find the requested information in Exhibit III.5 for the list of countries from which CTSV purchased or imported materials, parts, and components during the POI.
>
> CTSV did not purchase fully assembled chassis from any countries or the domestic market during the POI. CTSV itself produced fully assembled chassis in Vietnam from raw materials, components, and parts purchased in the domestic market and imported….

*Id*. Record evidence establishes that THACO imports for Pitts chassis are, in fact, materials, parts, and components, not sections of chassis frames. See also Pitts Letter to CBP re: Reply to

CIMC's Comments on Pitts' Submission of Scope Ruling Application with Commerce (Jan. 18, 2023) ("Pitts Jan. 18, 2023 Ltr."), Attachment (Reply to CIMC Pre-Initiation Comments on Pitts' Scope Clarification Request at 4 n. 6 and Exhibit 3 (Jan. 17, 2023)).

30.    CBP did not issue supplemental questionnaires.

31.    CBP refused to refer the scope product type inquiry to Commerce, but Pitts itself separately made a scope ruling request to Commerce. Compare Letter from CBP re: Response to Pitts Enterprises, Inc.'s Submission dated Nov. 9, 2022 (Nov. 28, 2022) with Pitts Letter to CBP re: Pitts Submission of Commerce Scope Ruling Application (Dec. 23, 2022).

32.    On February 13–17, 2023, CBP conducted an on-site verification at THACO's facilities in Vietnam. CBP found no discrepancies in sale, production or purchase information provided. CBP verified THACO produced the Pitts finished chassis with materials, components, and parts, and not subassemblies. *See* CBP On-Site Verification Report – EAPA Case Number 7711 (Mar. 21, 2023) released April 5, 2023 ("Verification Report")(Public Version).

33.    On February 28, 2023, TRLED informed Pitts that its submission dated February 13, 2023, of the Pitts Revised Scope Ruling Application with Commerce was rejected from the EAPA investigation record and would not be considered in the course of the EAPA investigation. *See* email from EAPA Investigations, TRLED, CBP re: TRLED - Rejection of New Factual Information (Feb. 28, 2023).

34.    After the investigation record closed CBP completed the Verification Report on March 21, 2023, but TRLED did not release the report to Pitts until April 5, 2023, and only released the Public Version, and not all verified information.

35.    CBP's verification proved that THACO produced the finished chassis with raw materials, components, and parts, and not subassemblies, and above all not with covered sections of chassis

frames. CBP verified THACO does not purchase any fully assembled sub-assemblies. Verification Report at 5, 13.

36.     Pitts was provided one week from issuance of the Public Version of the Verification Report to submit written argument but no factual information. Pitts timely submitted written argument on April 12, 2023, and a response to the CIMC written argument on April 27, 2023. *See* Pitts Written Argument (Apr. 12, 2023); Pitts Response to Written Argument (Apr. 27, 2023).

37.     On May 23, 2023, TRLED issued its Initial Determination. *See* CBP EAPA Case No. 7711 - Notice of Determination as to Evasion (May 23, 2023) (Public Version) ("Initial Determination"). The TRLED basis for evasion in its initiation was unchanged in the Initial Determination. TRLED continued to find evasion based on the CIMC misleading scope interpretation, covering Chinese components on any chassis, but finding the chassis manufactured in Vietnam themselves classified as entry Type 03 covered merchandise.

38.     In the Initial Determination TRLED stated "CBP verified the information contained in THACO's RFI responses with the information reviewed during the on-site verification; in particular, information related to the COO {, country of origin,} of the parts used in the production of chassis subassemblies, landing gear, and axles… {and} "CBP witnessed…processing of raw steel into parts for the chassis frames…." Initial Determination at 8.

39.     Pitts timely filed a request for administrative review on July 5, 2023. *See* EAPA Case No. 7711: Pitts Request for Administrative Review (Jul. 5, 2023). The administrative review subsequently commenced on July 6, 2023. *See* email from RR, CBP re: EAPA Case No. 7711 Commencement of Review (Jul. 6, 2023).

40.     The final results of the administrative review were completed on September 28, 2023.

*See* H332952 (Sept. 28, 2023) ("Administrative Review"). RR sustained the TRLED's

determination of evasion, but based on a misstatement of record facts that the finished chassis

were produced in Vietnam with sections of chassis frames from China despite CBP's verification

and Initial Determination to the contrary, and also the misleading CIMC scope claim on the

coverage of individual Chinese components. Specifically, RR stated:

> {T}he Orders clearly state that certain categories of merchandise, made in China,
> are covered, and remain covered, where that merchandise is subsequently
> incorporated into or imported with, non-Chinese-origin subassemblies,
> "components," or labor.

*Id*. at 12. This action ensued.

## STATEMENT OF CLAIMS

### COUNT I

41.     The allegations of paragraphs 1 through 40 are restated and incorporated herein by

reference.

42.     The allegation of evasion that triggered this EAPA investigation and basis for the CBP

initiation was that Pitts finished Vietnamese chassis imports integrated individual Chinese axle

components and landing gear leg components and an alleged failure at entry to segregate Chinese

axle and landing gear leg components as Chinese-origin components subject to AD/CVD under

the Orders. *See* Notice of Initiation at 5.

43.     Pitts did not dispute the finished chassis imports manufactured in Vietnam integrated

Chinese axle and landing gear leg components, but Chinese components were explicitly removed

from the scope of the Orders in the original AD/CVD investigations as stated in the Orders. The

finished chassis imports were manufactured in Vietnam with non-scope raw materials,

components, and parts and not with covered subassemblies. *See* THACO Dec. 20, 2022 RFI

Resp.; *see also* Pitts Jan. 18, 2023 Ltr.

44.     TRLED confirmed at the on-site verification that THACO produces the Pitts chassis with

non-scope raw materials, components and parts and not covered subassemblies. TRLED stated

that "while we did not witness all steps and sub-activities without each of the main activities of

the chassis production process outlined in the RFI Response Narrative and Exhibits… we

witnessed…processing of raw steel into parts for the chassis frames... {and} THACO does

not purchase any fully assembled sub-assemblies." *See* Verification Report at 5, 13. See also

Initial Determination at 8 (determining processing of raw steel into parts for the chassis frames).

45.     This Court will hold as unlawful any administrative decision that is arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law. *See* 19 U.S.C. §

1517(g)(2)(B).  An agency decision is arbitrary and capricious "if the agency has relied on

factors which Congress has not intended it to consider, entirely failed to consider an important

aspect of the problem, offered an explanation for its decision that runs counter to the evidence

before the agency, or is so implausible that it could not be ascribed to a difference in view or

the product of agency expertise."  *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.

Co.*, 463 U.S. 29, 43 (1983).

46.     An abuse of discretion occurs where the decision is based on an erroneous

interpretation of the law, on factual findings that are not supported by substantial evidence or

represent an unreasonable judgment in weighing relevant factors. *See Arnold P'ship v. Dudas*,

362 F.3d 1338, 1340 (Fed. Cir. 2004)(citation omitted).

47.     RR's final determination that Pitts evaded the Orders by THACO's use of sections of

chassis frames from China to produce chassis is arbitrary and capricious as it runs counter to the

record evidence, verified by CBP as decided in the Initial Determination, and is an abuse of

discretion as it is based on factual findings that are not supported by substantial evidence.

48.     Moreover, RR's stated review determination relies on documentation not on the record

and is in violation of 19 U.S.C. § 1517(f) and the CBP EAPA regulation, 19 C.F.R. § 165.45. *See*

Administrative Review at 10 n. 46, and 11 n. 54. RR, therefore, has not complied with the

procedures required under 19 U.S.C. § 1517(f) which allow a determination of evasion only if

supported by substantial evidence, considering the case record.

## COUNT II

49.     The allegations of paragraphs 1 through 48 are restated and incorporated herein by

reference.

50.     The TRLED and RR determinations that Pitts imports of finished chassis manufactured in

Vietnam integrating Chinese components were "covered merchandise" is arbitrary, capricious,

an abuse of discretion and otherwise not in accordance with law. The EAPA defines "covered

merchandise" as "merchandise that is subject to" an AD or CVD order. 19 U.S.C. § 1517(a)(3).

A component from China is not a subassembly and alone or with a chassis or subassembly of

non-Chinese origin, is not covered merchandise. The TRLED and RR determinations ignore the

AD/CVD country of origin requirement must apply to the subject merchandise as defined by the

scope and that merchandise entering a non-subject, third country must be the covered product in

the AD/CVD orders in the first instance. CBP ignored plain scope language distinguishing non-

scope components from subassemblies and explicitly stating Chinese components alone are not

covered, and failed to recognize proper third country scope language.

51.     TRLED's and RR's application of the Orders to the Pitts finished chassis is arbitrary and capricious and otherwise not in accordance with law because the determinations failed to acknowledge the entire scope and rendered the scope sentence "{i}ndividual components entered and sold by themselves are not subject to the order" impermissibly meaningless and superfluous. *See Trade Association Group Ltd. v. United States*, 961 F. Supp. 2d 1306, 1313 (Ct. Int'l 2014) (finding a scope construction unsupported where it fails to give effect to scope language).

## COUNT III

52.     The allegations of paragraphs 1 through 51 are restated and incorporated herein by reference.

53.     TRLED and RR specifically ignored a significant amount of information on the record to produce a conclusion that the Orders cover finished chassis manufactured in Vietnam integrating Chinese origin components. Specifically, TRLED and RR ignored record evidence and arguments raised by Pitts with petitioner that the descriptions of the merchandise contained in the AD/CVD petition, the initial investigation, Commerce scope determinations, and the injury investigation report of the ITC show that individual Chinese components alone are outside the scope of the Orders and do not render the chassis from Vietnam covered merchandise.

54.     TRLED and RR have therefore not complied with the procedures required under 19 U.S.C. § 1517(c)(1)(A) and (f) which allow a determination of evasion only if supported by substantial evidence, considering the case record as a whole.

55.     In their determinations TRLED and RR have not applied an appropriate substantial evidence standard, which "requires more than mere assertion of 'evidence which in and of itself justified {the determinations}, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.'" *Gerald Metals, Inc. v. United States*, 132

F.3d 716 720 (Fed. Cir. 1997) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Substantial evidence "requires an examination of the record as a whole, taking into account both the evidence that justifies and detracts from an agency's opinion." *See Falko-Gunter Falkner v. Inglis*, 448 F.3d 1357, 1363 (Fed. Cir. 2006)(citation omitted).

## COUNT IV

56.     The allegations of paragraphs 1 through 55 are restated and incorporated herein by reference.

57.     In the administrative review, RR expanded the scope of the Orders to include merchandise not considered during the underlying investigations by Commerce and the ITC. CBP improperly included non-scope merchandise "subsequently incorporated into or imported with, non-Chinese-origin subassemblies, 'components,' or labor." Administrative Review at 12. CBP improperly included certain non-scope chassis under the scope of the Orders. During the original AD/CVD investigations, the ITC considered covered Chinese chassis and subassemblies injured the domestic industry. *See* ITC Final. In the ITC's description of the manufacturing process of covered merchandise, finished covered chassis are built from steel raw materials and numerous components that are themselves produced by outside, third parties. ITC Final I-14–I-15, and I-21. The ITC specifically noted Commerce's scope removing individual Chinese components, including landing gear leg components, from the AD/CVD investigations. *Id*. at 14.

58.     CBP cannot unlawfully expand the scope of the Orders to include merchandise not considered during the original AD/CVD investigations; inclusion of non-scope merchandise would constitute such an unlawful expansion.

59.     Accordingly, CBP's expansion of the scope of the Orders is contrary to the law. *See* 19 U.S.C. § 1517(g)(2)(B).

## COUNT V

60.     The allegations of paragraphs 1 through 59 are restated and incorporated herein by

reference.

61.     TRLED's failure to refer the scope inquiry to Commerce violated 19 U.S.C. §

1517(b)(4)(A)(i) which required that CBP "shall . . . refer the matter to {Commerce} to

determine whether the merchandise is covered merchandise" when CBP "is unable to determine

whether the merchandise at issue is covered merchandise. 19 U.S.C. § 1517(b)(4)(A); *see also* 19

C.F.R. § 165.16(a).

62.     TRLED's failure to comply with its statutory obligation is contrary to the law. *See* 19

U.S.C. § 1517(g)(2)(B).

## COUNT VI

63.     The allegations of paragraphs 1 through 62 are restated and incorporated herein by

reference.

64.     TRLED's determination to initiate an EAPA investigation against Pitts on July 20, 2022

under 19 U.S.C. § 1517(b)(1) is unlawful. Section 1517(b)(1) directs CBP to initiate an

investigation only if it determines that the information provided in the allegation "reasonably

suggests" that an importer entered covered merchandise into the United States through evasion.

*See* 19 U.S.C. 1517 § 1517(b)(1); *see also* 19 C.F.R. § 165.15(b)(2).

65.     The alleger, CIMC's, allegation instigating the initiation consisted only of a misleading

scope interpretation (see Counts II and III above) that non-scope Chinese components alone were

covered merchandise and ignored the distinction between non-scope Chinese components not

covered by the Orders from Chinese components entered with a finished or unfinished Chinese

chassis, which is not sufficient to reasonably suggest that Pitts evaded the Orders as defined by

19 U.S.C. § 1517(a)(5). Therefore, there is no evidentiary basis that would reasonably suggest evasion, and TRLED initiated EAPA Inv. 7711 in violation of 19 U.S.C. § 1517(b)(1), and TRLED's failure to comply with its statutory obligation is contrary to the law. *See* 19 U.S.C. § 1517(g)(2)(B).

## COUNT VII

66.     The allegations of paragraphs 1 through 65 are restated and incorporated herein by reference.

67.     CBP's finding that Pitts entered merchandise by means of material and false statements was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. CBP based its finding that Pitts entered merchandise by means of false statements that are material on an unlawful interpretation of "covered merchandise" (see Counts II and III above). The Orders do not "cover" the goods at the time of entry. Pitts proposed the scope at issue, set by Commerce in the Orders, that provides directive that only in-scope Chinese chassis and subassemblies entering a third country are covered and explicitly removes Chinese components alone from the Orders. Because Pitts reasonably relied on plain scope language as informed by Commerce's scope determinations, Pitts did not make false statements (or material omissions) when it entered the merchandise. Rather, at the time of entry, Pitts correctly declared that its imports were "type 01" entries and not subject to the Orders.

## COUNT VIII

68.     The allegations of paragraphs 1 through 67 are restated and incorporated herein by reference.

69.     An importer participating in an administrative proceeding has a procedural due process "right to know what evidence is being used against one" under the Fifth Amendment of the U.S. Constitution. *Royal Brush Mfg., Inc. v. United States*, 75 F.4th 1250, 1258 (Fed. Cir. 2023). A fundamental due process requirement is "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation omitted). An importer has a right to rebuttal under CBP's EAPA regulations, 19 C.F.R. § 165.23(c)(1) (*id.* at 1262), and under the U.S. Constitution.

70.     CBP imposed interim measures under 19 U.S.C. § 1517(e) without notice of the allegation of evasion and CBP's investigation, and by lack of access to record documents in violation of the due process notice requirements. As with the time for notice to Plaintiff of the allegation and initiation of an investigation, CBP's analysis of evasion was informed by THACO's production cost information for shipments and TRLED's own calculations from verification that were designated as "business confidential". See Administrative Review at 10-11, and Initial Determination at 8-9. CBP did not release the THACO information designated as "business confidential" or CBP's calculations in the Verification Report and Initial Determination.

71.     The CBP determination of evasion was, thus, based on information designated "business confidential" and never made available to Pitts. In the disposition of the EAPA investigation CBP failed to release the information to Pitts.

72.     The denial of opportunity of notice and view of all record evidence foreclosed any opportunity by Pitts to rebut the purported evidence against it or to offer a contrary presentation. The CBP evasion determination, because it resulted from the constitutionally deficient process is

arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See* 19 U.S.C. § 1517(g)(2)(B).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment from the Court:

(1)     Enter judgment in favor of Plaintiff;

(2)     Hold and declare that CBP's evasion determination was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law as unsupported by substantial evidence;

(3)     Hold and declare that CBP's determination that Pitts imports of finished chassis manufactured in Vietnam integrating Chinese components were covered merchandise was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(4)     Hold and declare that CBP failed fully to comply with all procedures that the EAPA statute sets forth in connection with CBP's decisions;

(5)     Hold and declare that TRLED's failure to make a covered merchandise referral to Commerce on the product type covered otherwise not in accordance with law;

(6)     Hold and declare that TRLED's July 20, 2022, initiation of the EAPA investigation against Plaintiff invalid for lack of evidentiary basis that reasonably suggests evasion and imposition of interim measures null and void;

(7)     Hold and declare that CBP's finding that Pitts entered merchandise by means of materially false statements was arbitrary, capricious, an abuse of discretion, and other not in accordance with law;

(8)     Hold and declare that CBP's failure to provide Plaintiff notice and the opportunity to view and rebut all record information, including information designated as business confidential, arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law; and

(9)     Ordering CBP lift suspension and liquidate all of Plaintiff's entries of chassis without regard to AD/CVD; and

(10)    Granting Plaintiff such other relief as the Court may deem appropriate.


Respectfully submitted,


/s/Emily Lawson
Emily Lawson
Edmund W. Sim
APPLETON LUFF
1700 Seventh Ave., Suite 2100
Seattle, WA 98101
Tel: (206) 357-8522
Email: lawson@appletonluff.com

Dated:  November 6, 2023